IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA NICOLE PERNA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-1856 |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                      January 31, 2022

      This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Maria Nicole Perna ("Perna" or "Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq*. (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 14); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. 15); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 13) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ. The Commissioner seeks the entry of an order affirming the decision of the ALJ. For the reasons set forth below, we deny the request for review and affirm the ALJ's decision.

**I.     FACTUAL AND PROCEDURAL HISTORY**

      Perna filed her claims for DIB on November 17, 2016, asserting a disability onset date of June 10, 2016. In her initial filings to the state agency, she reported that she suffered from avascular necrosis of the hips and shoulders, shoulder pain, lumbar degenerative disease, difficulty standing

1

due to pain, anxiety, and panic attacks. She also indicated that she suffered pain in her legs due to a history of hip replacement surgery. (R. 238).

The state agency denied her claim on March 23, 2017. (R. 123). She then requested a hearing before an ALJ. A hearing was held on December 13, 2018, at which the ALJ heard testimony from Perna and a vocational expert ("VE"). At that hearing, Perna described her daily activities and her own subjective symptoms. (R. 76–89). The ALJ also posed several hypotheticals to the VE concerning Plaintiff's physical, emotional, and cognitive limitations, as well as jobs which might accommodate time off task due to emotional decompensation. (R. 91–101).

The ALJ issued an unfavorable decision on February 19, 2019, finding that although Perna could not return to her past work as an elementary school teacher and reading specialist, she could perform other work as a table worker, addressor, or lens inserter. (R. 38–39). The Appeals Council denied review on February 19, 2019, rendering the ALJ's determination the final decision of the Commissioner and the decision under review here. (R. 1–5).

## II.   STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Perna can perform past relevant work or other jobs that exist in sufficient numbers in the national economy is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's

decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### III. DECISION UNDER REVIEW

The issue before the ALJ at the time of his February 19, 2019, decision was whether Perna was disabled within the meaning of the Act. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) to reach his conclusion. At Step One, he found that Perna had not engaged in substantial gainful activity since the alleged onset date of June 10, 2016. (R. 28). At Step Two, the ALJ found that Perna's "lumbar degenerative disc disease; bilateral shoulder avascular necrosis; status-post bilateral hip replacement; anxiety disorder; post-traumatic stress disorder (PTSD); and major depressive disorder" constituted severe, medically determinable impairments which limited her ability to perform basic work activities. (R. 29).

At Step Three, the ALJ concluded that Plaintiff does not suffer from an impairment or combination of impairments satisfying the criteria of 20 C.F.R. § 404, Subpart P, Appendix 1. Regarding her physical impairments, the ALJ concluded that Perna's hip, shoulder, and lumbar conditions did not meet or equal the required criteria under the Act. These determinations are not at issue in the present request for review. The ALJ further concluded that Perna's mental impairments did not satisfy the criteria of the relevant listings under the Act. (R. 29–31). The ALJ cited treatment records in which Perna reported caring for her family members, attending to her daily needs, traveling to Florida for the holidays, shopping, and socializing. (R. 30).

The ALJ then evaluated Perna's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). He concluded that Perna:

> . . . has the residual functional capacity to perform sedentary work . . . except: occasionally reach overhead; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; occasionally be exposed to work involving unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, extreme cold, and vibration; can perform, use judgment, and tolerate occasional changes in a routine work setting defined as that consistent with routine and repetitive tasks and can have occasional interaction with supervisors, coworkers, and the public.

(R. 31). To reach this conclusion, the ALJ first evaluated the evidence concerning Plaintiff's physical conditions. He noted that the record did not support her alleged loss of functioning and that, though there was evidence of "significant physical limitations," her condition was relatively stable. Considering her testimony regarding difficulty walking and standing, the ALJ restricted Perna to sedentary work. (R. 35). The ALJ also considered Perna's mental limitations, drawing upon treatment records and opinion evidence from three sources: Plaintiff's therapist, Laurane McGlynn, Psy.D., her psychiatrist, Dr. Eric Becker, and a state agency consultant, Anthony Galdieri, Ph.D.

The ALJ noted that Plaintiff began treating with Dr. McGlynn in August 2013 for "symptoms of mild depression and anxiety . . . marital conflict and parenting issues with her special needs daughter." (R. 413). The ALJ gave little weight to letters furnished by Dr. McGlynn in September and October 2017 due to their vagueness, conclusory nature, and lack of specificity as to Plaintiff's functioning. The ALJ did give partial weight to a mental residual functional capacity assessment from Dr. McGlynn dated October 2018. Though he took issue with the "vague and counterintuitive" definition of terms in this report, the ALJ gave it partial weight "to the extent . . . that the opinion indicates the claimant has limitations which are not collectively work preclusive." (R. 37).

4

Perna's treatment with Dr. Becker began in February 2017. In her initial psychiatric evaluation, Plaintiff reported shortness of breath due to anxiety and a deterioration of symptoms following the death of her mother eleven days earlier. (R. 447). The ALJ characterized Dr. Becker's notes as "document[ing] waxing and waning symptoms" but also that they established that Perna could care for herself and her family, travel, and shop. The opinion further notes that Dr. Becker's treatment notes document Plaintiff's travel to a women's retreat, a planned trip to visit her brother in Florida, and an improvement in the state of her marriage. (R. 35).

The ALJ gave little weight to Dr. Becker's December 2018 assessment of Plaintiff's ability to do work-related activities due to his determination that it was vague and inconsistent with Dr. Becker's own contemporaneous treatment notes and the record as a whole. As a key example, the ALJ compared Dr. Becker's conclusion that Perna had no ability to function across several areas to Plaintiff's own testimony that "she drives, tends to her own personal care, makes simple food, grocery shops, goes to church, visits with family and friends, takes her children to dance and theatre activities every day of the week, assists in caring for her father, watches movies, occasionally eats out at chain restaurants, and uses a smartphone." (R. 37). The opinion also notes that Dr. Becker's report is internally inconsistent, indicating both that Plaintiff has profound mental health limitations and that she was able to manage benefits in her own interest.

In light of the mental health opinion evidence, the ALJ determined that Perna had "moderate limitations in interacting with others and concentrating, persisting, or maintaining pace." He further indicated that she had "mild limitations in understanding, remembering, or applying information and adapting or managing oneself" with no related functional limitations. These findings are the basis for the portion of the RFC limiting Perna to unskilled work with

"routine and repetitive tasks along with occasional interaction with supervisors, coworkers, and the public." (R. 36).

Great weight was afforded to the March 2017 Psychological Review Technique ("PRT") form from Dr. Galdieri, the Disability Determination Services ("DDS") consultant. The PRT indicated that Plaintiff's affective and anxiety disorders were severe and medically determinable, corresponding to mild limitations in the ability to understand, remember, apply information, adapt, and manage oneself and moderate difficulties interacting with others, concentrating, persisting, and maintaining pace. (R. 36, 119–20). The ALJ explained that the opinion of Dr. Galdieri as expressed in this PRT was entitled to great weight given that it "generally reflects a thorough and well-balanced review of the record" and is "consistent with [the] record as a whole and not undermined by any records received thereafter." (R. 36).

Based on the RFC restriction of unskilled and sedentary work with occasional social interaction, the ALJ determined that Perna could not return to past relevant work as an elementary teacher and reading improvement teacher. However, upon considering the testimony of a vocational expert, the ALJ determined at Step Five that there are jobs in sufficient number in the national economy that Plaintiff can perform. These include the occupations of table worker, addressor, and lens inserter. (R. 39). As such, the ALJ found that Perna was not disabled under the Act. (R. 40).

IV.   **DISCUSSION**

Perna asserts that remand is appropriate for two reasons. First, she argues that the ALJ improperly weighed mental health opinion evidence, resulting in an RFC determination that is unsupported by substantial evidence. Perna's second argument is that the ALJ's analysis of her

subjective complaints, daily activities, and treatment trajectory is under-nuanced and, therefore, not supported by substantial evidence. For the reasons indicated below, we find that both assertions are without merit. In short, the ALJ's weighing of the mental health opinion evidence and analysis of Plaintiff's subjective claims were sufficiently supported under the deferential standard of substantial evidence review.

> **A.    The ALJ's determinations as to the weight of the mental health opinion evidence were supported by substantial evidence.**

Plaintiff first argues that the ALJ assigned improper weight to the mental health opinion evidence and that the remaining evidence fails to lend substantial support to the RFC. As set forth below, the ALJ operated within the discretion allowed to him to reconcile conflicting and sometimes internally inconsistent opinion evidence from treating providers with the overall record. As such, the ALJ's conclusion as to what weight to assign each opinion was supported by substantial evidence.

As a preliminary matter, the opinion of an examining provider is ordinarily entitled to greater weight than non-examining providers, and the opinion of treating providers are entitled to the greatest (and possibly controlling) weight under certain circumstances. 20 C.F.R. § 404.1527(c). Therefore, "an ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r*, 554 F.3d 352, 355 (3d Cir. 2008) (internal quotations omitted). An ALJ must evaluate these factors when determining what weight to assign an opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency of the opinion with the record, the specialization of the provider, and any other factors which support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(2)–(6).

The Third Circuit has further stated that when the opinion of a non-treating, non-examining physician conflicts with that of a treating provider, "the ALJ may choose whom to credit, but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). At the very least, the ALJ must consider the entire record and explain why evidence is rejected or given less weight. *Id.*

However, the opinion of a treating physician does not bind the ALJ regarding an RFC determination. *Chandler v. Comm'r*, 667 F.3d 356, 361 (3d Cir. 2011). With respect to opinions from treating sources, such evidence will be controlling only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R § 404.1527(c)(2). Though an ALJ may only reject a treating provider's opinion outright based on contradictory medical evidence, she "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Further, when presented with evidence from a treating provider that is "conflicting and internally contradictory," the ALJ may properly give greater weight to the opinion of state agency evaluators. *See, e.g., Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Here, Plaintiff argues that the ALJ improperly weighed the opinion evidence. Specifically, she asserts that it was an error to give great weight to the opinion of Dr. Galdieri, the non-examining state agency evaluator, while giving less weight to opinion evidence submitted by Dr. McGlynn and Dr. Becker, both of whom treated Perna. (Pl. Br. 3). However, that determination was within the ALJ's discretion due to the inconsistencies between the

opinions of Dr. McGlynn and Dr. Becker, as well as discrepancies between the evaluations of both providers as compared to Plaintiff's own testimony about her daily activities.

Dr. Galdieri's report, dated March 8, 2017, found that Perna suffered from severe, medically determinable affective and anxiety disorders associated with mild to moderate work-related limitations. (R. 119–20). The ALJ afforded great weight to Dr. Galdieri's determination on the basis that it was consistent with Perna's treatment record, her daily activities, and the record as a whole. (R. 36).

Turning to the evidence provided by Plaintiff's treating providers, Dr. McGlynn provided a letter dated January 23, 2017, indicating diagnoses of major depressive disorder and panic disorder. The letter further described that while Perna continued to have difficulty managing her mental and physical ailments, she was responding well to a medication regimen intended to mitigate her anxiety and panic attacks. (R. 413–14). In a second letter dated October 7, 2017, Dr. McGlynn indicated that Perna's anxiety, which had been "well managed with ongoing psychotherapy and medication" had been exacerbated by the death of her mother and other triggering events. However, Dr. McGlynn opined that while her condition might make work difficult, Perna "could return to work if her symptoms improve, but with a limited schedule and with minimal environmental stressors." (R. 442–43).

A third letter dated September 8, 2018, further detailed ongoing issues and some deterioration in Perna's condition, including mood instability and episodes of suicidal ideation. On this basis, Dr. McGlynn opined that given Perna's depression and PTSD, "it would be difficult for her to work." (R. 444–45). The ALJ gave little weight to the opinions reflected in these letters, finding that Dr. McGlynn's statements "do not constitute a function-by-function

analysis," focusing instead "almost entirely on the claimant's subjective statements regarding her symptoms." (R. 37).

Dr. McGlynn also provided a report titled Medical Assessment of Ability to do Work Related Activities (Mental) ("Work Assessment") and dated December 11, 2018. In this report, Dr. McGlynn rated Perna's ability regarding making occupational, performance, and personal-social adjustments. Several fields were left blank, with Dr. McGlynn indicating that they were outside of her experience. In the remainder of the form, Dr. McGlynn rated Perna's functioning as "Fair" or better, with "Fair" being defined as "ability to function is seriously limited, but not precluded." (R. 506–07). The ALJ gave partial weight to this report insofar as it was consistent with the conclusion that Perna has some "limitations which are not collectively work preclusive." (R. 37). All three letters and the Work Assessment conveyed Dr. McGlynn's opinion that Perna might find work difficult and suggested limitations on the work she could do, but at no point did Dr. McGlynn suggest that Perna could not work at all.

Dr. Becker, Perna's treating psychiatrist, submitted his own Work Assessment for Perna. In contrast to the assessment from Dr. McGlynn, Dr. Becker rated Perna's functioning in many areas as "Poor or None," which was defined in the form as "no useful ability function in this area." (R. 508–09). Dr. Becker further noted that "periods of decreased concentration, moodiness, [and] anxiety" might affect work-related tasks. The ALJ gave little weight to this assessment, noting that it was internally inconsistent, contradicted Dr. Becker's own contemporaneous treatment notes, and otherwise was not in accord with the record as whole. Specifically, the ALJ pointed to Perna's testimony regarding her daily activities, her travel, and Dr. Becker's conclusion that Perna had both "profound mental health limitations" and the ability to manage benefits in her own best interest. (R. 37).

10

Faced with the conflicting opinions of two treating providers, the ALJ had to determine how much weight to ascribe to each expert. We find that he did so properly. The ALJ's analysis concerning Dr. Becker's assessments reflects an attempt to resolve inconsistent treatment notes with Dr. Becker's ultimate conclusions about Perna's ability to work rather than an outright rejection of the opinion evidence. For example, the ALJ notes that Dr. Becker's treatment records "are supportive of mental health limitations," but also describe Perna's impairments as "moderate" and well-managed by medication and treatment. (R. 37). This evaluation follows the findings of Dr. Galdieri and Dr. McGlynn, who both noted that Perna was subject to constrained, but not work-preclusive limitations. (R. 119–20, 506–07). In contrast, Dr. Becker's contemporaneous record of Perna's moderate limitations contradicts Dr. Becker's own Work Assessment, which found her to have no useful ability to function in numerous areas.

Plaintiff contends that the ALJ's discussion of her daily activities placed "inappropriate emphasis" on parts of the record, including descriptions of her travel and tasks carried out to support her family. (Pl. Br. 9). However, the existence and form of the ALJ's citation to Perna's activities of daily living was not improper in that it served to explain, in part, the basis for his decision to give little weight to Dr. Becker's Work Assessment. That Perna socialized or occasionally traveled out-of-state is not dispositive, as "sporadic or transitory activity does not disprove disability." *Smith v. Califano*, 637 F.2d 968, 971–72 (3d. Cir. 1981). Yet, upon closer analysis, such activities are directly relevant to the ALJ's determination as to the weight of Dr. Becker's analysis regarding Perna's ability to work.

In her brief, Plaintiff also notes that the ALJ's reference to her attendance at a women's retreat is under-nuanced. (Pl. Br. 10). This is incontrovertible. Nevertheless, Perna's travel, including to a four-day, out-of-state retreat, is directly relevant to the reconciliation of Dr.

11

Becker's treatment notes and his conclusion that Perna had work-preclusive limitations. Dr. Becker's notes document Perna's travel, at different times, to the retreat, to a rally in Harrisburg, to visit family in Florida, and to a convention. The ALJ was obligated to consider the implications of these records to determine the extent to which Dr. Becker's Work Assessment corresponded with the opinions of Dr. McGlynn and Dr. Galdieri, and the overall record.

Plaintiff next argues that the ALJ overemphasized activities, including caring for her family, attending to household chores, and doing some shopping, that are of a different character than those tasks expected of employees. Citing to cases from the Middle District of Pennsylvania and the Seventh Circuit, she asserts that such emphasis is inappropriate given that different factors are involved in family-centered tasks. These include greater scheduling flexibility, assistance from relatives, higher levels of motivation, and no minimum performance standard. (Pl. Br. 10).

Again, however, Dr. Becker's notes about Perna's daily activities contradicted his assessment of her ability to do work-related tasks. As one example, Dr. Becker rated Perna as having "[n]o useful ability to function" in the areas of dealing with the public, behaving in an emotionally stable manner, and relating predictably in social situations. (R. 508–09). As the ALJ explained, these ratings of profound mental limitations contradict Perna's testimony that she occasionally shopped for groceries, socialized with friends and family, and took her children to after-school activities. (R. 37, 77–80). Such a comparison is necessary to determine the appropriate weight to give Dr. Becker's opinion, which in turn affects the balance of the evidence.

Under the deferential standard of review, we find no basis to disturb the weight assigned by the ALJ to the mental health opinion evidence. In evaluating the level of credibility for each opinion rendered, the ALJ properly looked to the record to resolve inconsistencies within and between those assessments. Where the ALJ found that the record supported a finding of limitations, such conclusions were accounted for in the ALJ's RFC determination, including restriction to sedentary, routine, and repetitive work with occasional interaction with others. (R. 31). As noted by the ALJ, these restrictions were based on mental health evidence showing that Perna had "moderate limitations in interacting with others and concentrating, persisting, or maintaining pace." (R. 36). As such, the ALJ's determination as to how much weight to give each piece of opinion evidence was supported by substantial evidence.

**B.     The ALJ's analysis of Plaintiff's subjective complaints was supported by substantial evidence.**

Plaintiff next argues that the ALJ's analysis of her subjective complaints is unsupported by substantial evidence. We find this argument to be without merit, as the ALJ's explanation lends sufficient support to his conclusion that the record does not reflect Perna's subjective complaints and alleged loss of functioning.

In evaluating a claimant's subjective complaints, an ALJ must first determine whether a medically determinable impairment exists which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §404.1529(a). If such an impairment exists and is consistent with the record, the ALJ must then evaluate the intensity and persistence of subjective symptoms to determine if they produce any functional limitation. 20 C.F.R. § 404.1529(c).

An ALJ may reject such subjective testimony if he does not find it credible. *Schaudeck*, 181 F.3d at 433. However, an ALJ exercising the discretion to reject a claimant's testimony must

ensure that their findings are "as comprehensive and analytical as feasible" so as to be sufficient for a reviewing court to fulfill its responsibility under 42 U.S.C. § 405(g). *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The Third Circuit has further stated that this requirement is intended not to detract from the ALJ's findings of fact or responsibility to reconcile conflicting information, but is aimed at determining whether the ALJ has ignored a piece of evidence or decided it was not credible. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

Perna testified that she cannot sustain full-time work due to an "inability to sit for a long period of time or stand for a long period of time" and "severe PTSD." (R. 76–77). Regarding her mental impairments, she described ongoing challenges with emotional triggers that caused traumatic flashbacks, panic attacks, depression, and difficulty sleeping. (R. 83). She further indicated that she experienced drowsiness and memory problems as a result of her medication regimen. (R. 81, 84). The ALJ also engaged Perna in a colloquy regarding her daily activities and household chores. (R. 77–81).

In his decision, the ALJ noted that Plaintiff did have medically determinable impairments that could be expected to cause the alleged symptoms. The ALJ first summarized Perna's testimony and then discussed the medical evidence pertaining to her physical and mental claims. This review included orthopedic treatment records, imaging studies, and the notes and communications from Dr. McGlynn and Dr. Becker. Ultimately, however, the ALJ concluded that "the evidence does not generally support the alleged loss of functioning." (R. 35). Regarding her physical condition, the ALJ determined that the record reflected "significant physical limitations," but that the medical evidence indicated that her condition was stable and that she had attained good resolution of her symptoms. The ALJ further found that the mental health evidence documented "persistent systems of anxiety and depression" but that she also conducted

activities of daily living and otherwise had attained "grossly normal mental health status." (R. 35–36).

Perna argues that the ALJ's analysis is "under-nuanced" and points to several specific alleged flaws. (Pl. Br. 19). First, she asserts that the ALJ failed to account for the help she received from family in her daily activities. This is inaccurate. The ALJ did note areas where Perna demonstrated higher function, including tidying up after her children, doing the grocery shopping when her husband could not, attending regular church services, socializing with family and friends, driving her children to daily activities, and going out to eat. (R. 32). However, the same portion of the decision also described the physical and mental difficulties that Perna experienced, such as her reliance on her husband and children for chores and grocery shopping, her ongoing issues with traumatic triggers, her difficulties interacting with people, and the side effects of her medications.

Second, Perna again argues that the ALJ neglected to distinguish between activities of daily living and the demands of the average workplace. As previously discussed, however, Plaintiff has not pointed to any controlling authority which indicates that an ALJ must draw such a distinction, and we do not find any. Nevertheless, the evaluation of Perna's ability to perform activities of daily living, drive frequently, and relate socially to others is germane to the analysis of the credibility of her testimony and the various pieces of medical opinion evidence. The ALJ heard testimony from Perna that her mental and physical condition precludes certain types of work, including that which requires ongoing contact with colleagues and the public. (R. 89–90). The ALJ was therefore obligated to consider all evidence in the record, medical and nonmedical, which could support or refute such a claim and speak to the intensity of Perna's symptoms. This analysis includes "statements about the intensity, persistence, and limiting effects" of symptoms,

and "statements in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ properly considered whether Perna's testimony regarding the intensity and persistence of her symptoms was consistent with the medical and other evidence.

Plaintiff also asserts that it was improper for the ALJ to characterize Dr. Becker's records as showing grossly normal mental status. The ALJ did, however, note that Dr. Becker's records reflect "waxing and waning symptoms" during treatment. (R. 35). The decision also points out that these symptoms did not result in psychiatric hospitalization or referral to higher levels of treatment. Rhe ALJ's conclusions were not based on an outright rejection of Perna's subjective complaints, but rather on the determination that Perna's claims were partially supported by the record. For example, the ALJ found that Perna could not return to her past relevant work as a teacher based in part on her testimony regarding her physical pain.

The decision under review provides sufficient basis to find that adequate consideration was given to Perna's subjective complaints. The ALJ properly evaluated the record, including Perna's testimony, to determine that while the evidence substantiated some of the alleged limitations, it did not support the full intensity of the functional restrictions Perna described. It is clear from the decision which pertinent facts and evidence the ALJ relied upon to come to his final conclusions and RFC determination. Therefore, the ALJ's evaluation of Perna's subjective complaints is supported by substantial evidence.

## V.     CONCLUSION

We find no basis to disturb the ALJ's conclusion that Plaintiff is not disabled under the Act. The ALJ's determination as to the varying weight of the mental health evidence was supported by substantial evidence and necessitated by conflict among and within the opinions of treating and

non-treating sources. Further, the ALJ considered Plaintiff's subjective complaints, providing sufficient explanation for a reviewing court to follow his analysis. As such, both the ALJ's RFC determination and the analysis of Plaintiff's subjective complaints are supported by substantial evidence. For the foregoing reasons, we deny the request for review and affirm the ALJ's decision

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE